IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

STATE AUTO INSURANCE COMPANIES,

                    Plaintiff,                                OPINION AND ORDER

KEVIN SHULFER, EARL BAINES, PETER                            No. 13-cv-602-wmc
KOWALSKI, MIRIAM SMITH, and DAVE
DROWN,

                    Involuntary Plaintiffs,
        v.

WHIRLPOOL CORPORATION,

                    Defendant.

In this subrogation action, plaintiff State Automobile Insurance Corporation d/b/a State Auto Insurance Companies ("State Auto") seeks to recover payments made to the involuntary plaintiffs, each of whom had insurance policies through three of State Auto's member companies -- State Auto Insurance Company of Wisconsin, State Auto Property and Casualty Insurance Company, and State Auto Insurance Company (collectively, "the original plaintiffs").[1]   These involuntary plaintiffs all suffered property damage and submitted insurance claims due to an alleged defect in a valve manufactured by Elbi of America, Inc. ("Elbi"), which was in turn installed in dishwashers and washing machines manufactured and sold by defendant Whirlpool Corporation ("Whirlpool").   (Am. Compl. (dkt. #18).)

---

[1] As reflected in the caption above, State Auto technically sued using its trade name, as it is permitted to do by Fed. R. Civ. P. 12(b)(2) and Ohio law.  *See* discussion *infra*.

Because none of the original plaintiffs who filed this suit on August 28, 2013, had an individual claim worth $75,000 or more in controversy, 28 U.S.C. § 1332(a), this court granted Whirlpool's original motion to dismiss, but also granted the original plaintiffs' request to substitute the parent company, State Auto, as plaintiff. (Dkt. #15.) On December 23, 2013, State Auto filed an amended complaint bringing essentially the same claims against Whirlpool. (Dkt. #16.)[2]  As the holding company for the three original plaintiffs, State Auto alleges that the aggregate value of its members' combined claims meet the amount in controversy requirement.

In response, Whirlpool again moved to dismiss. This time, Whirlpool argues that: (1) "State Auto Insurance Companies" is merely a trade name and not a legal entity with the capacity to sue; (2) even if a trade name could bring a lawsuit, State Auto lacks standing to assert a right to subrogation based merely on the fact that it directly paid the insureds' claims; (3) the court should dismiss the entire case for improper venue; (4) the court should dismiss the entire case for failure to join required parties; and (5) State Auto cannot assert a claim against Earl Baines, one of the insureds, because it did not pay his deductible. (Dkt. #18.) Whirlpool's motion will be denied in part and granted in part.

---

[2]  State Auto's complaint initially named Elbi as a defendant.  (Compl. (dkt. #1).) However, its amended complaint does not.  (Am. Compl. (dkt. #16).)  Presumably, this is why plaintiffs are not claiming that venue lies pursuant to 28 U.S.C. § 1391(b)(1).

ALLEGATIONS OF FACT[3]

The amended complaint advances various state law claims for negligence and strict liability, invoking this court's diversity jurisdiction pursuant to 28 U.S.C. § 1332(a). State Auto alleges that Whirlpool negligently designed and installed the faulty Elbi valves into appliances it sold to five individuals in five different states: Shulfer; Baines; Kowalski; Smith; and Brown (collectively, "the insureds"). State Auto further alleges that the faulty valves in these appliances failed, causing significant water damage to the insureds homes.

The original plaintiffs are actually all "members" of the "State Auto Group," a collection of insurance companies. (Christenson Decl., Ex. 1 (dkt. #13-1) 2.) Some of the companies in the State Auto Group, including two of the original plaintiffs, State Auto Insurance Company and State Auto Property and Casualty Insurance Company, are consolidated subsidiaries of State Auto Financial Corporation. (Springer Decl., Ex. 1 (dkt. #20-1) 5.) State Automobile Mutual Insurance Corporation owns 62% of the outstanding shares of State Auto Financial Corporation. (*Id.*) The third original plaintiff, State Auto Insurance Company of Wisconsin, is a pooled subsidiary of State Automobile Mutual Insurance Corporation. (*Id.*) Thus, while the three original plaintiffs fall along distinct branches of subsidiaries, State Automobile Mutual Insurance Corporation ultimately sits on top of the corporate umbrella that includes each of them.

State Automobile Mutual Insurance Corporation is an Ohio corporation with its principal place of business in Columbus, Ohio. (*Id.*, Ex. 3 (dkt. #20-3) 1.) State Auto

---

[3] In recounting the facts, the court relies on State Auto's amended complaint, as well as representations and concessions in the parties' briefs and supporting affidavits.

has registered for and operated under the trade name "State Auto Insurance Companies," the name used here.  (Am. Compl. (dkt. #16) ¶ 3.)  Defendant Whirlpool is a Delaware corporation, with its principal place of business in Michigan.  (*Id.* ¶ 9.)  As such, complete diversity exists between the parties.[4]  To meet the amount in controversy requirement, State Auto proposes to aggregate the amounts it paid to each of the insureds, which would total $156,336.90.  (Am. Compl., Ex. A (dkt. #16-1).)

OPINION

Whirlpool identifies five, separate reasons why this court should dismiss State Auto's amended complaint, either in part or in its entirety.  The court will address each argument in turn.[5]

---

[4] The court has not recounted the citizenship of the individual involuntary plaintiffs as they appear to be nominal parties.  *See Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 461 (1980) ("[A] federal court must disregard nominal or formal parties and rest jurisdiction only upon the citizenship of real parties to the controversy.").  Even if the court were to consider them, none of the insureds are citizens of Delaware or Michigan.  (*See* Am. Compl. (dkt. #16) ¶¶ 4-8.)

[5] In its response, State Auto asserts that Whirlpool waived some of these grounds for dismissal.  Pursuant to Rule 12(g)(2), State Auto argues that Whirlpool missed its only opportunity to move to dismiss claims against Baines for failing to pay his deductible or to dismiss the entire case for failure to join parties or for improper venue.  (Pl.'s Opp'n (dkt. #21) 3.)  While an amended complaint does not generally revive waived Rule 12 defenses, a defendant may nevertheless bring a Rule 12 motion in response to an amended complaint that raises *new* claims or changes the nature of a suit.  *See* 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1388 (3d ed. 2004); *Carroll v. CMH Homes, Inc.*, No. 12-cv-23, 2013 WL 960408, at *4 (S.D. Ind. Mar. 12, 2013) ("It would be patently unfair to allow Plaintiffs a second pleading without giving Defendants a renewed opportunity to file their motion to dismiss. Plaintiffs' insistence that in amending their complaint they merely added a party and did not alter the substance of the claims ... is unavailing, and unsupported by any case law or other authority.").  The court is satisfied that in naming a new plaintiff and thereby arguably

4

## I.  State Auto's Capacity to Bring Suit

Federal Rule of Civil Procedure 17(a) requires a "real party in interest" to prosecute a case.  Here, State Auto signed the checks to the insureds and controlled the bank account that provided the funds for the insureds' claims.  (Pl.'s Opp'n (dkt. #21) 5; Butters Decl., Ex. 1 (dkt. #23-1).)  As State Auto now seeks reimbursement for those payments, it is a real party in interest.  *Krueger v. Cartwright*, 996 F.2d 928, 931 (7th Cir. 1993) ("The general rule in federal court is that if an insurer has paid the entire claim of its insured, the insurer is the real party in interest under Federal Rule of Civil Procedure 17(a) and must sue in its own name.").

Even though State Auto is the party in interest, it must still have the capacity to sue under Rule 17(b).  Whirlpool argues that "State Auto Insurance Companies" is merely a trade name, and not a legal entity.  In support, Whirlpool cites Fed. R. Civ. P. 17(b)(3), which provides that for parties who are not corporations or individuals, the capacity to sue is determined "by the law of the state where the court is located."  Thus, according to Whirlpool, Wisconsin law should determine whether State Auto can sue using its trade name.[6]

_____

meeting the monetary threshold for jurisdiction based on diversity of citizenship, State Auto's amended complaint changed the nature of this federal suit.  Indeed, without federal jurisdiction this court could not address Whirlpool's motion at all.

[6] Whirlpool presumably urges the court to apply Wisconsin law because it believes trade names lack capacity to sue in this state, but it does not actually direct the court to any case law or statute in support of this proposition.  Rather, Whirlpool argues that State Auto somehow has the burden to identify controlling Wisconsin law.  Why this would be so is unclear.  Afterall, it is *Whirlpool*'s motion to dismiss.  *See BondPro Corp. v. Siemens Power Generation, Inc.*, 463 F.3d 702, 705 (7th Cir. 2006) ("[I]t is always open to a defendant to show that the plaintiff in a diversity suit lacks capacity, under the law of the

State Auto counters by arguing that Rule 17(b)(2) governs its capacity to sue. This provision, applicable to corporations, provides that capacity to sue is determined "by the law under which [the corporation] was organized." If 17(b)(2) applies, Ohio law determines whether State Auto can sue as a trade name and not surprisingly, Ohio law permits corporations to sue in their trade names, so long as the name is registered with the Ohio Secretary of State. *See* Ohio Rev. Code § 1329.10(B).[7]

The parties propose two distinct approaches for analyzing State Auto's capacity to sue. Whirlpool argues that the court must begin by looking at the name of the plaintiff -- State Auto -- and then select the provision of Rule 17(b) that best describes what the named plaintiff is (*i.e.*, a person, a corporation, or an unincorporated association). In contrast, State Auto argues that the court should look past the name of the plaintiff to the entity underneath -- State Automobile Mutual Insurance Company -- and select the appropriate provision. The court concludes that State Auto's approach is correct.

Rule 17 emphasizes looking to the law of the state of incorporation when determining a corporation's capacity to sue. A dissolved corporation, for example, may not technically be a corporation, but federal courts *still* look to the law of the state of incorporation when determining whether the entity can sue or be sued. *See Williams v.*

---

plaintiff's state, to bring a suit.") Moreover, consistent with *BondPro*, State Auto asserts standing to sue under the law of the state in which it is incorporated and does business -- *Ohio*. Therefore, there was no need for State Auto to direct the court to Wisconsin law on this issue.

[7] Prior to commencing this lawsuit, State Automobile Mutual Insurance Company registered "State Auto Insurance Companies" as a trade name. (Springer Decl., Ex. 4 (dkt. #20-4).)

*Bd. of Educ. of Chi.*, 506 F. App'x 517, 519 (7th Cir. 2013) (looking to the law of the state of incorporation pursuant to Rule 17(b)(2) when determining a dissolved corporation's capacity to sue).  This approach to Rule 17 is consistent with the view that the entity underneath a claim matters, meaning that courts cannot determine an entity's capacity to sue solely by looking at the name a party puts on top of its complaint.  Other district courts favor this same reading of Rule 17.  *See, e.g.*, *Adams Wrecker Serv. v. City of Blanchard, Okla.*, No. 13-cv-126, 2013 WL 5726022, at *1 n.2 (W.D. Okla. Oct. 21, 2013) (applying Rule 17(b)(3) to a sole proprietorship and looking to state law to determine whether the entity can sue in its trade name); *Sensory Technologies, LLC v. Sensory Tech. Consultants, Inc.*, No. 13-cv-834, 2013 WL 5230700, at *2 (S.D. Ind. Sept. 17, 2013) (first applying Rule 17(b)(3) to a limited liability company and looking to state law).

The cases Whirlpool cites in support of its position are distinguishable.  For example, Whirlpool relies on *Com-Pac Int'l, Inc. v. Packmate Co.*, No. 06-cv-467, 2007 WL 2458231 (S.D. Ill. Aug. 24, 2007), for the proposition that "you can't sue a trade name." In *Com-Pac Int'l*, however, the plaintiff insisted that the defendant (a trade name) was a corporation.  2007 WL 2458231, at *2.  The court was willing to use Rule 17(b)(2) to look at the law of the state of incorporation, but ultimately dismissed the case because the plaintiff could not identify the appropriate state.  The court held that "[w]ithout such information, [it] must look to the law of the state in which the district court is held . . . to determine who may sue and be sued."  *Id.*  In contrast, State Auto *has* identified (and Whirlpool has conceded) Ohio as its state of incorporation and has shown that

7

Ohio law allows trade names to bring lawsuits.  If anything, *Com-Pac, Int'l* contradicts Whirlpool's argument and supports using Rule 17(b)(2).[8]

Finally, because "State Auto Insurance Companies" is merely the trade name for State Automobile Mutual Insurance Company, the true entity behind this suit, Rule 17(b)(2) directs this court to answer questions of capacity to sue by looking to Ohio law, where State Auto is incorporated and principally does business.  Since Ohio law allows corporations to bring suit using their trade names, State Auto has the capacity to sue using its trade name.

## II.  State Auto's Subrogation Rights

Whirlpool next argues that State Auto lacks the subrogation rights to pursue the claims of the involuntary plaintiffs.  In general, there are two types of subrogation rights: a right that "arise[s] from an agreement (express or implied) between the subrogor and subrogee, . . . often referred to as conventional or contractual subrogation;" and a right that does not "depend on the existence of an agreement [and] can arise simply from the fact of payment," often referred to as equitable subrogation.  *Mut. Serv. Cas. Ins. Co. v. Elizabeth State Bank*, 265 F.3d 601, 626 (7th Cir. 2001).  In this case, State Auto

---

[8] The other cases cited by Whirlpool are equally distinguishable.  Indeed, these cases all rely on state laws that are not applicable here, or are otherwise distinguishable on the facts.  *See, e.g.*, *Diesel Mach., Inc. v. Manitowoc Crane Grp.*, 777 F. Supp. 2d 1198, 1204 (D.S.D. 2011) (stating that the parties agreed that a trade name could not be sued under South Dakota law); *Pacheco v. Joseph McMahon Corp.*, 698 F. Supp. 2d 291, 295 (D. Conn. 2010) (relying on a Connecticut appellate court's interpretation of that state's trade name regulation statutes); *Vitek v. AIG Life Brokerage*, No. 06-cv-0615, 2007 WL 682431, at *4 (S.D. Ohio Feb. 27, 2007) (concluding that "the record is unclear as to whether [the defendant] is incorporated, or operates under a trade name or under a fictitious name" and dismissing the case for improper service).

effectively concedes that its subrogation rights are not contractual in nature; instead, it claims the right to equitable subrogation.   On the other hand, Whirlpool argues that State Auto has no right to equitable subrogation because it was not obligated to pay the claims of the insureds.   In so arguing, Whirlpool relies on the "volunteer rule," which generally provides that "the right to subrogation only arises when a person *other than a mere volunteer* pays a debt [that] in equity and good conscience should be satisfied by another." *Local Gov't Prop. Ins. Fund v. Spirtas Wrecking Co.*, No. 07-cv-291, 2009 WL 2392140, at *2 (E.D. Wis. July 31, 2009) (original emphasis) (internal quotations omitted).   Whirlpool also represents that this same rule applies in each of the states where the property losses in this case occurred.   (Def.'s Br. (dkt. #19) 8.)   Urging a broad reading of the volunteer rule, Whirlpool goes on to argue that absent some *tangible* obligation, State Auto acted as a mere volunteer in paying off its members' insurance policies.

State Auto responds that it was, in fact, "obligated to" pay the insureds, although it, too, fails to provide any details regarding that obligation, except to assert that had it not made these payments, it could have faced a lawsuit from the insureds.[9]  (Am. Compl. (dkt. #16) ¶ 14; Pl.'s Opp'n (dkt. #21) 8.)

---

[9] State Auto's brief does not indicate what cause of action the insureds could bring directly against State Auto.   Whirlpool concedes that the insureds might have had claims against the original plaintiffs (the insurance companies with which they had policies), but argues that the insureds could not bring claims directly against State Auto.   Whether this is no may depend on nuances of state corporate and insurance law.   Fortunately, for reasons explained above, the court need not wade into this ancillary dispute to resolve the present motion.

The scope of the volunteer rule is not as broad as Whirlpool suggests.  In fact, "the voluntary payment defense is a narrow exception to the principles of subrogation [and] is necessarily limited to those rare cases where payment is truly voluntary, or what some courts call 'intermeddling.'"  *Local Gov't Prop. Ins. Fund*, 2009 WL 2392140, at *2.  "'Generally, the party making payment is a volunteer if, in so doing, he has no right or interest of his own to protect, and acts without obligation, moral or legal, and without being requested by anyone liable on the obligation.'"  *Id.* (quoting *Blackford v. Dickey*, 302 Ark. 261, 266, 789 S.W.2d 445 (1990).  Contrary to Whirlpool's assertion, "[a]bsolute and clear legal liability of the payor has not been a fixed prerequisite to obtaining subrogation rights."  *Jindra v. Diederich Flooring*, 181 Wis. 2d 579, 607, 511 N.W.2d 855 (1994).  For example, courts routinely refuse to apply the volunteer rule where, as here, the party making the payment is under an intangible pressure to do so.  *See, e.g.*, *Transamerica Ins. Co. v. South*, 125 F.3d 392, 397 (7th Cir. 1997) ("The *potential* for legal liability to the subrogor, as well as the disruption of normal relations and the frustration of reasonable expectations can, in many cases, supply sufficient compulsion to support subrogation.") (emphasis added) (internal citations omitted); *Local Gov't Prop. Ins. Fund*, 2009 WL 2392140, at *2 (an insurance fund's payment was not "voluntary" even though the fund paid before settling a dispute as to whether it was legally obligated to pay).

To counter the narrow applicability of the volunteer rule, Whirlpool directs the court to *United States Aviation Underwriters, Inc. v. Dassault Aviation*, 505 F. Supp. 2d 1252, 1254 (D. Wyo. 2007), for the proposition that "the mere fact of payment by the

10

managing company of a collective pool of insurance companies [does] not confer subrogation rights on the managing company." (Def.'s Br. (dkt. #19) 9.) Unfortunately for Whirlpool, the *Dassault* decision does not control here. As a preliminary matter, *Dassault* involved a question of Wyoming law. 505 F. Supp. 2d at 1257. Moreover, *Dassault* was primarily a case about the economic loss doctrine, not subrogation, and Whirlpool relies on a lone paragraph from that decision, which contains neither legal citation nor extended analysis. *Id.* at 1259-60.

*Dassault* is also distinguishable on its facts. That case involved an unincorporated consortium of otherwise unrelated member insurance companies, of which the plaintiff was the manager. The member insurance companies insured the owner of an aircraft. After the plane crashed, the plaintiff-manager made payments to the insured "on behalf of [the consortium]." *Id.* In discussing whether the plaintiff had standing, the court concluded that the member insurance companies of the consortium, not the manager, were subrogated to the rights of the aircraft owner. *Id.* at 1260. In trying to draw a parallel to this case, Whirlpool correctly notes that the manager was not a party to the insurance policies in question, but overlooks the fact that there was *no* relationship between the member companies and the manager. Here, State Auto is not simply the manager of an informal collection of unrelated companies; rather, State Auto is the parent company of several subsidiaries, including the insurance companies who were the original plaintiffs here. Even if State Auto did not have a contractual obligation to pay the claims of the insureds, the court is satisfied that the company acted out of an interest

for its own corporate family, and accepted a practical, if not legal, obligation, to make good on the debts of its subsidiaries.[10]

Broadly speaking, equitable subrogation "rests upon the equitable principle that one, other than a volunteer, who pays for the wrong of another should be permitted to look to the wrongdoer to the extent he has paid and be subject to the defenses of the wrongdoer." *Pitts v. Revocable Trust of Knueppel*, 2005 WI 95, ¶ 34, 282 Wis. 2d 550, 698 N.W.2d 761 (citing *Garrity v. Rural Mut. Ins. Co.*, 77 Wis.2d 537, 541, 253 N.W.2d 512 (1977)); *see also Universal Forest Prods. E. Div., Inc. v. Morris Forest Prods., LLC*, 558 F. Supp. 2d 893, 901 (E.D. Wis. 2008). This is exactly what is happening in this case. Several insureds were allegedly injured by Whirlpool. Pursuant to the insurance policies State Auto subsidiaries issued, it compensated the insureds for their injuries. As such, State Auto was under "sufficient compulsion" to pay the debts of its subsidiaries. *See Transamerica Ins. Co.*, 125 F.3d at 397. Given that the volunteer rule is intended to be a

---

[10] Whirlpool is not without a response to this point. Specifically, Whirlpool notes that there is an inherent contradiction in this case because insurance companies typically use their corporate structures to *protect* parent companies from litigation. Whirlpool reasons that it is unfair to allow an insurance company to use its corporate structure "as both a shield and sword." (Def.'s Br. (dkt. #19) 12.) To support its position, Whirlpool tries to analogize this case to *LaPlante v. OneBeacon Insurance Group*, No. 05-cv-496, 2006 WL 3004750 (D.R.I. Oct. 20, 2006). *LaPlante*, however, was not a case about subrogation, but "an insurance contract dispute between an insured and an insurer." 2006 WL 3004750, at *2. For the purposes of defeating diversity jurisdiction, the plaintiff named the limited liability company that owned the insurance company with which he had a dispute. *Id.* at *2-3. Plaintiff refused to name the actual insurance company as the defendant, despite invitations to do so. *Id.* If anything, *LaPlante* simply holds that, in a contract dispute, the plaintiff must sue the company with which he actually has a contract; a consideration not at issue in this case. Thus, while Whirlpool correctly identifies an inconsistency in State Auto's position, Whirlpool ultimately offers no legal or equitable ground which allows State Auto to benefit from this approach.

*narrow* exception to the doctrine of equitable subrogation, the court, therefore, concludes that State Auto may assert subrogation rights on behalf of those same subsidiaries.

## III. Venue

Whirlpool also argues that venue does not lie here because "this case consists of five separate actions . . . . only one [of which] is based on property damage occurring in Wisconsin." (Def.'s Br. (dkt. #19) 16.) Whirlpool does not move, even in the alternative, to transfer venue to another district, but only asks this court to dismiss State Auto's claim outright pursuant to Rule 12(b)(3).

In cases "[w]here jurisdiction of an action is based solely on diversity, venue is determined in accordance with the requirements of 28 U.S.C. § [1391(b)]." *Estate of Moore v. Dixon*, 460 F. Supp. 2d 931, 935 (E.D. Wis. 2006).[11] Section 1391(b) offers three routes to proper venue. The statute provides that

> [a] civil action may be brought in--(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b).

In its Rule 12(b)(3) motion, Whirlpool asserts that State Auto cannot fit its Wisconsin cause of action into any of these three categories. In its amended complaint,

---

[11]  Congress has amended § 1391, so that subsection (a) is now subsection (b).

State Auto invokes § 1391(b)(2) or (3) for proper venue.  Because a substantial part of the events or omissions giving rise to State Auto's claim occurred in this district, the court agrees that venue is proper under 28 U.S.C. § 1391(b)(2).[12]

In any Rule 12(b)(3) inquiry, "the court must take all allegations in the complaint as true unless contradicted by the defendants' affidavits." *Estate of Moore*, 460 F. Supp. 2d at 935.  Here, Whirlpool argues that only one of the five payments at issue -- the payment to Shulfer -- was for damage in Wisconsin, and a majority of the money State Auto actually paid was for damages that occurred outside Wisconsin.  Thus, Whirlpool concludes that the part of the claim arising from its activities in Wisconsin is not "substantial" within the meaning of § 1391(b)(2).  State Auto responds that the payment to Shulfer represents the largest of the five payments, and amounts to nearly forty-three percent of the entire alleged damages, while the next largest payment was to Kowalski, and represents about twenty-nine percent of the total damages.  (*See* Am. Compl., Ex. 1 (dkt. #16-1).)  Accepting these allegations as true, State Auto has at minimum selected the venue in which the largest individual portion of the damages occurred.

"The test of determining whether a 'substantial part' of the events or omissions giving rise to a claim occurred in a particular district is more of a qualitative, rather than quantitative inquiry." *Estate of Moore*, 460 F. Supp. 2d at 936 (citing *Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 432-33 (2d Cir. 2005)); *see also Sentry Select Ins. Co. v. McCoy Corp.*, No. 12-cv-831, 2013 WL 5442367, at *4 (W.D. Wis. Sept. 30,

---

[12] Having found a necessary basis for venue under § 1391(b)(2), the court will not separately discuss State Auto's alternative contention that venue is proper under § 1391(b)(3), since (b)(3) *only* applies when neither of the first two subsections apply. *Estate of Moore*, 460 F. Supp. 2d at 935.

2013)(quoting *Estate of Moore*, 460 F. Supp. 2d at 936).  For this reason, contrary to Whirlpool's contention, the "substantial part" inquiry does not turn on whether a *majority* of the activities or harm occurred in this district.  *See Quarra Stone Co., LLC v. Yale Univ.*, No. 13-cv-790, 2014 WL 320059, at *11 (W.D. Wis. Jan. 29, 2014); *TruServ Corp. v. Neff*, 6 F. Supp. 2d 790, 792 (N.D. Ill. 1998).[13]  In this case, State Auto suffered part of its injury because Whirlpool allegedly manufactured a faulty product sold to a resident in this district.  Moreover, the product as alleged malfunctioned and caused property damage in this district.  Finally, State Auto now seeks to recover the money it sent into this district as a result of those damages.  Accepting these allegations as true for the purpose of this motion, the court is satisfied that a "substantial part" of the events giving rise to State Auto's subrogation claim did, in fact, occur in this district.  As such, venue is proper under § 1391(b)(2).

To escape this result, Whirlpool directs this court to *Narkol/Fibercore, Inc. v. Gubb*, 279 F. Supp. 2d 993, 999 (E.D. Wis. 2003), holding that venue must be proper "as to all defendants and all claims."  But that case concerned whether a plaintiff could use the pendant venue doctrine to bring a claim governed by a special venue statute, 28 U.S.C. § 1400(b), in the same district as claims governed by the general federal venue statute, 28 U.S.C. § 1391.  *Narkol/Fibercore,* 279 F. Supp. 2d at 999.  The court held that venue was proper for the claims governed by § 1391 but not for those governed by § 1400(b) and the plaintiff could not use the pendant venue doctrine to cure the defect.  *Id.* at 999-

_____

[13] In apparent recognition of the soundness of State Auto's approach, Whirlpool's reply brief contains no further discussion on this point.  (*See* Def.'s Reply (dkt. #25) 8-10.)

1000.  In contrast, State Auto brings two claims that:  (1) are governed by the same venue statute; and (2) arise out of the same events or omissions, a substantial part of which occurred in this district.  Accordingly, while Whirlpool is correct to argue that venue must be proper for all claims and all defendants, it is incorrect to suggest that the requirement is not satisfied in this case.

The remainder of Whirlpool's venue challenge is that this district is not convenient or may not be the best forum for State Auto's claim.  Implicitly, Whirlpool appears to argue that other districts would offer better forums in which to litigate this dispute.  These arguments might be appropriate if Whirlpool was asking the court to *transfer* the case pursuant to 28 U.S.C. § 1404.  As the court has noted, however, Whirlpool does not seek transfer, it seeks *dismissal*.  Even if it was, Whirlpool has advanced no viable reason not to honor State Auto's original choice of forum.  *See Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219-20 (7th Cir. 1986) (requiring defendant to show that the transfer will serve the convenience of the parties, the convenience of the witnesses, and the interests of justice).  Accordingly, the court rejects Whirlpools arguments of inconvenience as both irrelevant to the Rule 12(b)(3) inquiry and meritless.

## IV.  Joinder of the Insureds as Involuntary Plaintiffs

Whirlpool's last argument for dismissing the entire case is that State Auto has failed to properly join the insureds as involuntary plaintiffs pursuant to Rule 12(b)(7).  Whirlpool's argument is actually comprised of two parts:  (1) the insureds do not meet Rule 19's requirements for involuntary plaintiffs and State Auto incorrectly named them

as such; and (2) the insureds are nevertheless required parties who the court cannot join, making dismissal appropriate under Rule 12(b)(7).  With the exception of Shulfer, who is within this court's jurisdiction in any event, the court concludes that State Auto has properly joined the insureds as involuntary plaintiffs and that dismissal is not warranted.

Rule 19 provides that "[i]f a person has not been joined as required, the court must order that person be made a party.  A person who refuses to join as a plaintiff may be made either a defendant or, in a proper case, an involuntary plaintiff."  Fed. R. Civ. P. 19(a)(2).  While it is rare to use Rule 19 to join involuntary plaintiffs, the procedure is appropriate where a required party "has refused to be joined as a plaintiff and is outside the court's jurisdiction."  *Moerke v. Altec Indus., Inc.*, No. 12-cv-903, 2013 WL 6185213, at *6 (W.D. Wis. Nov. 26, 2013); *see also* 7 Charles Alan Wright et al., *Federal Practice and Procedure* § 1606 (3d ed. 2001) ("A party may be made an involuntary plaintiff only if the person is beyond the jurisdiction of the court, and is notified of the action, but refuses to join.").

As the moving party, Whirlpool has the burden of persuasion on this issue.  *See CFI Wis., Inc. v. Hartford Fire Ins. Co.*, 230 F.R.D. 552, 554 (W.D. Wis. 2005) ("[T]he moving party has the burden of persuasion when it argues for dismissal pursuant to Rule 19.") (citing *Se. Sheet Metal Joint Apprenticeship Training Fund v. Barsuli*, 950 F. Supp. 1406, 1414 (E.D. Wis. 1997)).  Whirlpool argues that the insureds have not "refused" to join this suit and, therefore, cannot be named involuntary plaintiffs.  Whirlpool further argues that Shulfer is a resident of Wisconsin and within the court's jurisdiction, so he fails the second requirement.

### A. Shulfer

Shulfer lives in Stevens Point, Wisconsin, which is within the Western District of Wisconsin. (Am. Compl. (dkt. #16) ¶ 4.) Because he is within the jurisdiction of this court, Shulfer cannot ordinarily be added as an involuntary plaintiff. *See Moerke*, 2013 WL 6185213, at *6 ("[A] party who wishes to name an involuntary plaintiff must show that the absent party has refused to be joined as a plaintiff and is outside the court's jurisdiction . . . . Otherwise, the absent party must be joined and served as a defendant and then realigned if necessary.") (internal citations omitted). State Auto concedes that Shulfer cannot qualify as an involuntary plaintiff, but proposes that the court simply dismiss Shulfer rather than the entire case. (Pl.'s Opp'n (dkt. #21) 10-11.)

Even though the parties agree that Shulfer should be dismissed, the court must continue its Rule 19 inquiry to determine whether Shulfer is a *required* party, without whom this case cannot proceed. *See* Fed. R. Civ. P. 19(b). State Auto asserts that it paid Schulfer's loss in full without requiring him to pay his $2,500 deductible. (Pl.'s Opp'n (dkt. #21) 11; Butters Decl. (dkt. # 23) ¶ 4.) Whirlpool responds that this assertion does not guarantee that Shulfer will *never* have to pay his deductible and, therefore, urges the court to assume Shulfer still has an interest in this case (presumably because State Auto may ask Shulfer to pay his deductible sometime in the future and, in turn, Shulfer may seek to recover from Whirlpool any amount he pays).

To require the sort of comprehensive evidence Whirlpool seeks would be inappropriate, particularly because *Whirlpool* not State Auto, has the burden of persuasion on this issue. To carry its burden, Whirlpool raises only conjecture. State

Auto has not pursued Shulfer for his deductible, and Whirlpool offers nothing to suggest it ever will.  The court is satisfied that Shulfer is, therefore, not a required party.  At the same time, Rule 21 provides that "[m]isjoinder of parties is not a ground for dismissing an action. On motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party."  Because he is not a required party, the court will drop Shulfer from this case.

### B.  The Remaining Insureds

None of the remaining insureds are within the jurisdiction of this court, so Whirlpool objects to them being named as involuntary plaintiffs solely on the basis that they are willing participants in this litigation.   Responding to Whirlpool's objections, State Auto has filed the affidavit of Kevin Butters, a Senior Claims Recovery Representative for State Auto Insurance Companies.  (Dkt. #23.)  Among other things, this affidavit states that Mr. Butters has "communicated with State Auto's insureds and none of the insureds identified in this lawsuit has any claim in this matter outside of their respective deductibles.  The insureds had no interest in participating in this lawsuit as plaintiffs."  (*Id.* ¶ 5.)  Whirlpool complains that just because the insureds did not have an interest in participating does not mean they "refused" to participate.  While this may be true, Whirlpool ignores that it carries the burden of showing that the involuntary plaintiffs *would* participate.

In any event, Whirlpool fails to direct the court to any case that supports such a strict reading of this "refusal" requirement.  Instead, Whirlpool merely points out that

State Auto could have provided actual correspondence from the insureds rather than relying on the affidavit of a State Auto employee.   Whirlpool holds the burden of persuasion on this issue.   Without authority for a more exacting standard of what constitutes "refusal" under Rule 19, Whirlpool fails to carry this burden.   Accordingly, the court concludes that State Auto properly named the remaining insureds as involuntary plaintiffs.


**V.  The Baines Claim**

Whirlpool's final argument is for dismissal of that portion of State Auto's claim directed against Baines, the insured from Arkansas.   Whirlpool relies on *Farm Bureau Insurance Company v. Case Corporation*, 317 Ark. 467, 878 S.W.2d 741 (1994), where the Supreme Court of Arkansas held that where an insurance company has not paid an insured's deductible, the insured is the real party in interest, and must pursue an action for recovery of the entire claim and "stand[] as trustee to [his] insurer as to any amount recovered."   *Id*. at 469.   State Auto concedes this is the law in Arkansas, but offers to remedy the situation by paying Baines his $500 deductible and then dropping him from the case.  (Pl.'s Opp'n (dkt. #21) 10.)

At this time, the court will grant Whirlpool's motion to dismiss State Auto's claim concerning Baines's damages and dismiss Baines as an involuntary plaintiff.   This dismissal, however, will be without prejudice to State Auto filing an amended complaint alleging in good faith that it has paid Baines's deductible.   Given the slow start to this

case, and in an attempt to move this case past the pleadings, any amended complaint will

be due on or before October 24, 2014.

ORDER

IT IS ORDERED that:

1) defendant Whirlpool Corporation's motion to dismiss (dkt. #18) is DENIED IN PART AND GRANTED IN PART. Defendant's motion to dismiss all claims concerning involuntary plaintiff Earl Baines is GRANTED without prejudice; in all other respects, the motion is DENIED; and

2) plaintiff State Auto Insurance Companies may have until October 24, 2014 to file an amended complaint alleging in good faith that it has paid Bainses' deductible.

Entered this 14th day of October, 2014.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge